1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11    DION REIF,                                    No. 2:25-cv-02963-DC-AC

12                    Plaintiff,

13          v.                                       ORDER GRANTING PLAINTIFF'S MOTION
                                                     FOR A TEMPORARY RESTRAINING
14    NEWREZ, LLC,                                   ORDER

15                    Defendant.                     (Doc. No. 2)

16

17          This matter is before the court on Plaintiff's motion for a temporary restraining order.

18    (Doc. No. 2.) The court does not find it appropriate to set the motion for a hearing pursuant to

19    Local Rule 231(c). For the reasons explained below, the court will grant Plaintiff's motion.

20                                    **BACKGROUND**

21          On October 14, 2024, Plaintiff filed this action against Defendant NewRez, LLC alleging

22    several claims arising out of a mortgage loan secured by Plaintiff's real property located at 13244

23    Country Heights Drive, Penn Valley, California 95946 (the "Property.") (Doc. No. 1.) In his

24    complaint, Plaintiff alleges as follows.

25          On or about June 14, 2022, Plaintiff purchased the Property and took out a first position

26    loan with American Home Loans in the amount of $1,095,200.00 (*Id.* at ¶ 9.) The Property is a

27    single-family home and is Plaintiff's primary residence. (*Id.* at ¶ 8). Since at least January 15,

28    2025, Defendant has been the servicer of the loan. (*Id.* at ¶ 10.)

At some point during 2025, Plaintiff and Defendant entered into a forbearance agreement regarding the loan. (*Id.* at ¶ 11.) The forbearance agreement ended on October 1, 2025. (*Id.*) The parties agreed that Plaintiff would apply for a "modification to bring the loan current" once the forbearance agreement ended. (*Id.*) A customer service representative told Plaintiff he could not apply for a loan modification until the forbearance agreement ended. (*Id.* at ¶ 12.) A trustee's sale of the Property is scheduled for October 15, 2025, though Plaintiff does not allege when he learned of the sale. (*Id.*)

On September 30, 2025, Plaintiff spoke with another individual, Erica Macon, who told Plaintiff that that previous customer service representative he spoke to was mistaken, and that Plaintiff did not have to wait until the end of the forbearance agreement to apply for a loan modification. (*Id.* at ¶ 13.) Ms. Macon told Plaintiff to apply immediately and said she would follow up with Plaintiff every forty-eight (48) hours to ensure the application was complete. (*Id.*) Plaintiff submitted his loan modification application on September 30, 2025. (*Id.* at ¶ 21.) However, Plaintiff did not hear back from Ms. Macon regarding his loan modification application despite emailing her. (*Id.* at ¶ 13.)

On October 3, 2025, Plaintiff followed up with Defendant by phone to check the status of his loan modification application. (*Id.* at ¶ 14.) Plaintiff spoke with an individual named Michael, who told him that he was now Plaintiff's "single point of contact." (*Id.*) Michael told Plaintiff that Plaintiff's loan modification application was complete on October 3, 2025 and under review. (*Id.*)

Plaintiff attempted to call Michael again on an undisclosed date but did not speak to him. (*Id.* at ¶ 15.) Plaintiff learned thereafter that another individual, Alejandro Ocampo, was his new "single point of contact." (*Id.*) Plaintiff likewise was unable to reach and speak to Ms. Ocampo regarding the status of his loan modification application. (*Id.*) Plaintiff then contacted his prior "single point of contact," Aarika Hamilton, to get assistance with his application. (*Id.*) On October 10, 2025, Ms. Hamilton informed Plaintiff that Plaintiff needed to submit additional documentation to complete his application. (*Id.*) Plaintiff did not submit additional documentation, but received a letter from Defendant on October 12, 2025, informing him that his loan modification application was complete and under review. (*Id.*) Notwithstanding the

completion of Plaintiff's application, Defendant plans to proceed with the trustee sale of the Property on October 15, 2025, at 12:30 p.m. (*Id.* at ¶ 16.)

Based on the foregoing, Plaintiff brings the following claims against Defendant: (1) violations of the Homeowner Bill of Rights ("HBOR"), California Civil Code § 2923.6; (2) violations of the HBOR, California Civil Code § 2923.7; and (3) violation of the California Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200 *et seq.* (Doc. No. 1 at ¶¶ 18–36.)

On October 14, 2025, Plaintiff filed the pending *ex parte* motion for a temporary restraining order to prevent Defendant from conducting the scheduled foreclosure sale of the Property. (Doc. No. 2.) Counsel for Plaintiff also filed a declaration describing her efforts to contact Defendant's employees prior to filing the pending motion. (Doc. No. 2-3.)

## LEGAL STANDARD

The purpose of a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Courts within the Ninth Circuit may also consider a request for a temporary restraining order using a "sliding scale" approach in which "a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131–35. "[W]hen plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." *Where Do We Go*

1   *Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022) (citing *All. for the Wild*

2   *Rockies*, 632 F.3d at 1135). Nevertheless, injunctive relief is "an extraordinary remedy that may

3   only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter*, 555 U.S. at

4   22.

5                                        **ANALYSIS**

6   **A.     Compliance with Procedural Requirements**

7           Federal Rule of Civil Procedure 65(b)(1) permits the court to issue a temporary restraining

8   order without notice to the adverse party only if (1) specific facts in the affidavit or underlying

9   pleading show that immediate and irreparable injury, loss, or damage will result before the

10  opposing party may be heard; and (2) the movant certifies in writing efforts made to give notice

11  and the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1). This court's Local

12  Rules also set forth certain procedural requirements, including that the movant provide the

13  following documents: (1) a complaint; (2) a motion for temporary restraining order; (3) a brief on

14  all relevant legal issues; (4) an affidavit in support of the existence of irreparable injury; (5) an

15  affidavit detailing the notice or efforts undertaken or showing good cause why notice should not

16  be given; (6) a proposed temporary restraining order with a provision for bond; (7) a proposed

17  order with blanks for fixing the time and date for a hearing; and (8) where a temporary restraining

18  order is requested *ex parte*, the proposed order should also notify the affected parties of the right

19  to apply to the court for modification or dissolution on two (2) days' notice or such shorter notice

20  as the court may allow. E.D. Cal. Local Rule 231(c).

21          Plaintiff's motion for temporary restraining order is procedurally deficient because

22  Plaintiff has not complied with certain requirements under the local rules. *See* Fed. R. Civ. P.

23  65(b)(1)(B); E.D. Cal. L.R. 231(a) & 231 (c)(5). Plaintiff's counsel stated in a declaration that she

24  attempted to email the two employees of Defendant of whom Plaintiff had been in contact, but

25  did not receive a response. (Doc. No. 2-3 at ¶ 3.) It does not appear Plaintiff has attempted to

26  serve Defendant's agent for service of process. Therefore, the court will require the Plaintiff to

27  file a declaration detailing their additional efforts to serve Defendant. *See* E.D. Cal. L.R. 231(c).

28  Further, Plaintiff's proposed order also does not notify the affected party of its right to apply to

                                              4

1    the court for modification or dissolution on two (2) days' notice. *See id.*

2         However, "[a] district court has the inherent power to excuse a party's failure, if any, to

3    comply with local rules." *Hill v. World Sav. Bank*, No. 10-cv-9940-GW-FMO, 2011 WL

4    13579583, at \*5 n.14 (C.D. Cal. Feb. 24, 2011). Plaintiff's filings include most of the information

5    required by the local rules, including a complaint, a motion or application, a brief on all relevant

6    legal issues presented by the application, and an affidavit in support of the existence of an

7    irreparable injury. E.D. Cal. L.R. 231(c). Plaintiff's affidavit also provides a sufficient

8    explanation as to why the *ex parte* application was not filed sooner. (Doc. No. 2-2.) Therefore, the

9    court exercises its discretion to excuse Plaintiff's noncompliance with the local rules.

10   **B.      Likelihood of Success on the Merits**

11        Plaintiff alleges violations of the HBOR, California Civil Code §§ 2923.6 and 2923.7 and

12   the UCL. (Doc. No. 1.) Under Section 2923.6, a lender is prohibited from "dual tracking," which

13   is the practice of proceeding with the foreclosure process while reviewing a loan modification

14   application. *See* Cal. Civ. Code § 2923.6(c). The HBOR was enacted to prohibit such practices

15   and to provide greater protection for homeowners during the foreclosure process. *Bermudez v.*

16   *Caliber Home Loans, Inc.*, No. 2:16-cv-01570-MCE-KJN, 2016 WL 3854431, at \*2 (E.D. Cal.

17   July 14, 2016) (citing Cal. Civ. Code § 2923.b(6)). The statute provides in relevant part that:

18              If a borrower submits a complete application for a first lien loan
19              modification offered by, or through, the borrower's mortgage
                servicer at least five business days before a scheduled foreclosure
20              sale, a mortgage servicer, mortgagee, trustee, beneficiary, or
                authorized agent shall not record a notice of default or notice of sale,
21              or conduct a trustee's sale, while the complete first lien loan
                modification application is pending. A mortgage servicer,
22              mortgagee, trustee, beneficiary, or authorized agent shall not record
                a notice of default or notice of sale or conduct a trustee's sale until
23              any of the following occurs:

24              (1) The mortgage servicer makes a written determination that the
                borrower is not eligible for a first lien loan modification, and any
25              appeal period pursuant to subdivision (d) has expired.

26              (2) The borrower does not accept an offered first lien loan
                modification within 14 days of the offer.

27              (3) The borrower accepts a written first lien loan modification, but
28              defaults on, or otherwise breaches the borrower's obligations under,
                the first lien loan modification.

5

1    Cal. Civ. Code § 2923.6(c).

2          Here, it is not clear on what date Plaintiff submitted a "complete application." *See* Cal.

3    Civ. Code § 2923.6(c). Plaintiff alleges that he submitted a complete loan modification

4    application regarding his first lien mortgage loan on the Property to Defendant on September 30,

5    2025. (Doc. No. 1 at ¶ 21.) Further, Plaintiff avers that an employee of Defendant informed him

6    that as of October 3, 2025, Plaintiff's loan modification application was complete and under

7    review. (*Id.* at ¶ 14.) According to Plaintiff, a different employee of Defendant told him on

8    October 10, 2025, that Plaintiff needed to submit additional documents to complete the

9    application. (*Id.* at ¶ 15.) Despite not submitting additional documentation, Plaintiff alleges he

10   received a letter from Defendant on October 12, 2025, confirming that Plaintiff's loan

11   modification application was complete and under review. (*Id.*)

12         Though Plaintiff alleges he did not receive the letter until October 12, 2025, Plaintiff is

13   only required to "submit[] a complete application for a first lien loan modification" five business

14   days prior to the foreclosure sale. *See* Cal. Civ. Code § 2923.6(c). The court cannot confirm the

15   date the application was complete without the letter from Defendant, which Plaintiff has not

16   provided. However, based on Plaintiff's allegations, it appears that Plaintiff's loan modification

17   application was complete as early as October 3, 2025, which is more than five business days

18   before the foreclosure sale scheduled for October 15, 2025. *See id.* Given Plaintiff's allegations

19   that he submitted the loan modification application at least five business days prior to the

20   foreclosure sale and that it is currently pending, and that none of the three conditions provided for

21   in Section 2923.6(c) have occurred, allowing Defendant to proceed with the October 15, 2025

22   foreclosure sale would violate the provisions of Section 2923.6(c). *See Mcbride v. PHH Mortg.*

23   *Corp.*, No. 2:23-cv-02242-WBS-DB, 2024 WL 557791, at *2 (E.D. Cal. Feb. 12, 2024) (finding

24   that plaintiff had shown a likelihood of success on the merits of his Section 2923.6 claim where

25   plaintiff submitted a complete application for loan modification and defendant had only provided

26   a conditional, non-final offer in response); *Singh v. Bank of Am., N.A.*, No. 2:13-cv-00729-MCE-

27   AC, 2013 WL 1759863, at *2 (E.D. Cal. Apr. 24, 2013) (finding that plaintiff had shown a

28   likelihood of success on the merits of his Section 2923.6 claim where he alleged that he did not

1    receive a response from defendant regarding his complete application for a first lien loan

2    modification).

3       Accordingly, Plaintiff has demonstrated that there are at least serious questions on the

4    merits of his Section 2923.6 claim.

5    **C.  Likelihood of Irreparable Harm, Balance of the Equities, & the Public Interest**

6       Plaintiff has made a sufficient showing on the remaining three factors. First, Plaintiff has

7    demonstrated that he is likely to suffer irreparable harm in the absence of preliminary relief.

8    Plaintiff is at risk of his primary residence being sold, and the loss of a primary residence

9    constitutes irreparable harm. *See Campos v. Dyck O'Neal, Inc.*, No. 2:24-cv-01317-KJM-DB,

10   2024 WL 2941656, at *3 (E.D. Cal. May 10, 2024) (finding sale of plaintiffs' primary residence

11   constituted irreparable harm); *Mcbride*, 2024 WL 557791, at *2 (finding that the foreclosure of

12   plaintiff's home constituted irreparable harm); *McMahon v. JPMorgan Chase Bank, N.A.*, No.

13   2:16-cv-1459-JAM-KJN, 2016 WL 3637002, at *2 (E.D. Cal. June 29, 2016) (same).

14      Second, the balance of the equities tips sharply in Plaintiff's favor. Plaintiff faces the risk

15   of losing his primary residence, while the issuance of a temporary restraining order would delay

16   the foreclosure sale or allow Plaintiff to successfully modify the Loan. Thus, the hardship to

17   Defendant caused by the delay of the sale "pales in comparison to the possibility that Plaintiff

18   could wrongfully lose his home." *Alvarez v. Wells Fargo Bank, N.A.*, No. 2:15-cv-00943-TLN-

19   DB, 2019 WL 4734757, at *4 (E.D. Cal. Sept. 27, 2019); *see also Fernandes v. Nationstar

20   Mortg. LLC*, No. 2:24-cv-01946-DAD-JDP, 2024 WL 3470805, at *5 (E.D. Cal. July 19, 2024)

21   (finding balance of the equities tipped sharply in favor of plaintiff where plaintiff would lose his

22   primary residence if the foreclosure sale proceeded).

23      Lastly, the injunction is in the public interest because it enforces "[t]he public has a strong

24   interest in foreclosure sales being conducted according to the letter and the spirit of the law."

25   *Mcbride*, 2024 WL 557791, at *2; *see also Bowes v. PennyMac Loan Servs., LLC*, No. 8:21-cv-

26   02030-JLS-KES, 2021 WL 8944673, at *3 (C.D. Cal. Dec. 13, 2021) ("[T]emporarily delaying a

27   potentially improper foreclosure benefits the public interest because it protects consumers and

28   keeps lenders accountable."). Because Plaintiff has raised serious questions going to the merits of

his Section 2923.6 claim, established that balance of the equities tips sharply in his favor, and made a sufficient showing as to the other two factors, the court will grant Plaintiff's motion for a temporary restraining order.

**CONCLUSION**

For the reasons explained above,

1.    Plaintiffs' motion for a temporary restraining order (Doc. No. 2) is GRANTED[1];

2.    For a period of fourteen (14) days from the date of entry of this order or until the court rules on a timely filed motion for preliminary injunction, whichever is later, Defendant is restrained and prevented from conducting a trustee's sale of the real property located at 13244 Country Heights Drive, Penn Valley, California 95946[2];

3.    If Plaintiff chooses to file a motion for preliminary injunction, Plaintiff must do so in accordance with the following schedule set by the court:

   a.    Plaintiff shall file his motion for preliminary injunction by no later than October 17, 2025 and notice the motion for a hearing on November 7, 2025, at 1:30 p.m. in Courtroom 10; and

   b.    Defendant shall file its opposition to the motion by no later than October 31, 2025;

4.    Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff is not required to post a bond;

5.    Plaintiff shall file a proof of service or a declaration detailing their additional efforts to serve the moving papers and this order on Defendant by no later than October 16, 2025, at 5:00 p.m.; and

6.    Defendant is further notified of its right to apply to the court for modification or

---

[1] Pursuant to Federal Rule of Civil Procedure 65(b)(2), this temporary restraining order will expire fourteen (14) days from the date of entry absent a finding of good cause to extend it or consent by Defendant to a longer extension. *See* Fed. R. Civ. P. 65(b)(2).

[2] Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 65(d)(2), an order on a temporary restraining order "binds only the [affected parties] who receive actual notice of it by personal service or otherwise . . . ." *See* Fed. R. Civ. P. 65(d)(2).

dissolution of this temporary restraining order, if appropriate and supported by a showing of good cause, on two (2) days' notice or such shorter notice as the court may allow. *See* Fed. R. Civ. P. 65(b)(4) and Local Rule 231(c)(8).

IT IS SO ORDERED.

Dated:   **October 15, 2025**

Dena Coggins
United States District Judge